IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PFC. ERIK L. CAMPBELL,                          :
                                                :
            Plaintiff,                          :
                                                :
      v.                                        :
                                                :
CHIEF SAMUEL D. MACKERT,III,                    :    C.A. No.
individually and in his official                :
capacity as the Chief, Dewey                    :
Beach Police Department, GORDON                 :
ELLIOT, individually and in                     :    Jury Trial Demanded
his official capacity as Town                   :
Manager, and the TOWN OF DEWEY                  :
BEACH, a municipal corporation,                 :
                                                :
            Defendants.                         :

## COMPLAINT

1.    This is a civil action for compensatory and punitive
damages and for injunctive relief for retaliatory violations of
the petition clause of the First Amendment of the U.S.
Constitution.  Because he filed official grievances about matters
such as abuse of the DELJIS criminal records system and the
failure to implement the use of taser guns to safely subdue
accused criminals, plaintiff has been illegally demoted, denied
promotional opportunities, denied overtime and other benefits,
and otherwise harassed by the defendants.

## I.  JURISDICTION

2.    The jurisdiction of this Court is invoked pursuant to 28

-1-

U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and
2202, and the Fourteenth Amendment to the U.S. Constitution.  The
cause of action arises under 42 U.S.C. § 1983.  The claim arose
in this judicial district.

## II.  **THE PARTIES**

3.  Plaintiff PFC. Erik L. Campbell is a citizen of the
United States and a resident of Delaware.

4.  Plaintiff is currently employed as a Private First Class
in the Dewey Beach Police Department.  He is a twelve year
veteran of the force.  After graduating from the Police Academy
in 1997, he served as a Private, was promoted to Private First
Class in December 1998, Corporal in the spring of 2000, Senior
Corporal in November 2002, Probationary Sergeant in March 2003,
and Sergeant in June 2004. He earlier worked beginning in June
1993 as a part-time seasonal employee.  His job performance has
always been satisfactory, good or excellent.

5.  Defendant Samuel Mackert ("Mackert") is currently the
Chief of the Town of Dewey Beach Police Department and is its
highest-ranking officer.  He is sued individually and in his
official capacity.

6.  Defendant Gordon Elliott ("Elliott") is currently the
Town of Dewey Beach's Town Manager.  He was the former Chief of
Police for the Town of Dewey Beach.  He became Town Manager in
August 2003. He is sued individually and in his official

capacity.  Throughout the facts alleged herein, he authorized, ratified, sanctioned or participated in the illegal actions of Mackert.

7.  Defendant the Town of Dewey Beach (the "Town") is a municipal corporation of the State of Delaware and it operates the Dewey Beach Police Department ("DBPD") where plaintiff is employed.  The DBPD has about twelve full time non-seasonal police officers.

### III.  FACTS GIVING RISE TO THE ACTION

8.  Plaintiff has filed numerous written grievances with the DBPD invoking formal written mechanisms that had previously been adopted by the Town, which are either found in written Town policy or in a duly adopted Union contract, to correct the operations of municipal government.  These formal written grievances either affected plaintiff personally or also touched upon matters of public concern.  The grievances were legitimate and they were not a sham.

9.  Each individual defendant was personally aware of each of plaintiff's written grievances since they were either filed directly with Mackert or went by appeal to Elliot, who was the reviewing official.

10.  Each grievance antagonized and angered each individual defendant.

11.  By the use of these written grievances plaintiff sought

to fix the operations of the DBPD which were broken and to
correct abuse of power, mismanagement and threats to public
safety.

12.  These written grievances were the substantial or
motivating cause of a long course of retaliatory adverse action
directed against plaintiff by the two individual defendants.

### A. The Four Written Grievances

#### 1.  The First Grievance Filed with Mackert.

13.  A December 2, 2004 Union grievance was filed with
Mackert which included the following:

> a.  A statement that in July 2004, Elliott violated
> the laws and regulations surrounding the statewide
> DELJIS criminal records system by causing an
> illegal criminal background check of a Town
> employee.

> b.  A statement that Elliott improperly dispensed
> overtime pay to a part-time employee and that,
> contrary to policy, seasonal officers were not
> being given copies of the employee manual, nor
> were they signing off that they had received them.

#### 2.  The Second Grievance Filed with Mackert.

14.  On or about January 18, 2005, plaintiff sent another
written grievance to Mackert requesting back pay for the period
January 1, 2005 to January 11, 2005.  He also grieved a January
11, 2005 notice of demotion in rank which was being imposed on
him by Mackert.

15.  On or about January 22, 2005, plaintiff sent a written
Union grievance to Elliot regarding his personal back pay issue

because Mackert told him it must be appealed to Elliot.
Plaintiff also included the issue of the improper notice of the
demotion which was being imposed on him.

16.  On or about January 29, 2005, plaintiff sent a memo to
Elliot regarding the back pay issue and also complaining that
personal items were missing from his office.

### 3.  The Third Grievance Filed with Mackert.

17.  On or about March 18, 2005, plaintiff filed a written
grievance with Mackert regarding his calendar year 2004
performance evaluation and also procedurally irregular reprimands
which Mackert had given him concerning a failure to salute
incident.

18.  On or about March 26, 2005, plaintiff sent an
unsuccessful written grievance to Elliot appealing Mackert's
negative response to his most recent grievance.

### 4.  The Fourth Grievance Filed with Mackert.

19.  On October 31, 2005, plaintiff filed a union grievance
expressing concern that the Town policy on taser guns was not
being properly implemented.  Since taser guns are a less forceful
response to a dangerous situation, they better promote the well
being and safety of the general populace than the use of more
deadly forms of force.  Plaintiff described an incident which
occurred on October 2, 2005.  Despite initially successful
attempts to de-escalate an arrestee, the arrestee became violent,

kicked in the wall, broke a water pipe, and continued to escalate his violent behavior by biting officers and banging his head. Had taser guns been issued to the DBPD, as was the policy of the Town, the individual involved could have been subdued in a safer fashion.

### B. The Continuing Course of Adverse Action

20.  Plaintiff was subject to the following continuing course of adverse action as a result of filing his various written grievances.  This adverse action would deter a person of reasonable firmness from exercising his legal right to file a written grievance.  The adverse action occurred after protected conduct.

### 1.  The Demotion.

21.  Mackert demoted plaintiff three ranks to Private First Class on January 11, 2005.  The demotion was procedurally irregular and three ranks lower than his previous rank. Plaintiff has remained permanently in this demoted status for nearly two years.

### 2.  Rotating Shifts.

22.  In January 2005, Mackert placed plaintiff on continuously changing shifts for four months.  Plaintiff was initially placed on the 5:00 pm to 3:00 am shift for three days, followed by three days off.  He then was given a 9:00 pm to 7:00 am shift for three days, followed by three days off.  This

rotating schedule was repeated until May 5, 2005.  Plaintiff had more rotating shifts than any other officer on the force.

### 3.    Fitness For Duty Exam.

23.  On January 10, 2005 plaintiff also was sent to Timonium, MD for a fitness for duty examination.

### 4.    Loss of Pay.

24.  Plaintiff's pay was lowered to an incorrect rate for the period between January 1, 2005 to January 11, 2005.

25.  Plaintiff also did not receive a 2004 Christmas bonus while everyone else in the DBPD did.

### 5.    Office Invasion.

26.  On January 29, 2005, personal items including photographs, a rolodex, and files which had been stored in a locked cabinet were mysteriously removed from plaintiff's office. The lock he had purchased for his gym locker also was cut.

### 6.    Loss of Vehicle Privileges.

27.  In late January 2005 Mackert revoked plaintiff's right to have a take-home police vehicle.

28.  Plaintiff's vehicle privileges were returned in early October 2005, but after his October 31, 2005 grievance they again were rescinded due to alleged "lateness."

29.  Other officers who arrived late were not reprimanded in the same manner by the loss of their vehicles.

### 7.    Improper Charges of Failure to Salute.

-7-

30.  Mackert wrote plaintiff up on March 9, 2005 and disciplined him for failure to render a salute on one occasion.

31.  But another officer also did not salute on that occasion.  However, he was not reprimanded or punished in any way while plaintiff was punished.

32.  Plaintiff then was given the punishment of attending Police Academy training on Discipline and Courtesy.  This was particularly demeaning, because plaintiff had previously taught courses at the Academy and assisted in the development of curriculum.  The reprimand also included bolded underlined language stating that "future penalty will range from Suspension to Termination of Employment."

33.  Next, plaintiff on November 15, 2005 was improperly accused of failing to salute Mackert who had briefly paused in a doorway to an office where plaintiff had his back turned to the door and did not see him.

34.  Plaintiff was singled out for harassment over failure to salute.  For example, at the employee holiday party in December 2005, when plaintiff rendered a salute to Mackert, four other officers did not.  However, no reprimands or punishments were meted out to the other officers.

### 8.  Shunning.

35.  At this same event, Mackert shook everyone's hand, but he refused to shake plaintiff's hand and he shunned him.

36.  Also on August 31, 2005, Mackert shunned plaintiff at the shooting range.  He also refused to speak to him. Plaintiff's salute was unreturned.  Other employees did not salute Mackert and but they were not reprimanded.

37.  Plaintiff was not given tickets to the Police and Firemen's recognition dinner in 2005 or 2006, despite the fact that part-time officers, dispatchers and even civilian employees were given tickets.  Extra tickets were also given to other officer's wives and girlfriends.

### 9.  Tampering With the Job Evaluation Process.

38.  In a violation of standard DBPD procedures, Mackert in 2005 had plaintiff's annual evaluation for calendar year 2004 conducted by an officer inferior to plaintiff's rank.  During this evaluation time period, he was a Sergeant and the evaluator was only a Corporal.

39.  On appeal of plaintiff's grievance Elliott determined that the evaluation should be redone, but his ruling was not enforced.

### 10.  Tampering with Vacation and Sick Time.

40.  Mackert in March 2005 denied plaintiff over 30 hours vacation and over 90 days sick time which he had accrued.

41.  On January 14, 2005, Elliott had told plaintiff that because he was not able to take vacation in 2004, he would be able to carry over that time into 2005, and that he should take

those days immediately.  Elliott stated that Mackert had been
taking excess days, and plaintiff also should take his.  Elliott
also added Campbell's 18 sick days to his accumulated time.  On
March 28, 2005, Elliott called plaintiff into his office
regarding accrued time.  At this meeting, Elliott affirmed the
vacation and sick time which plaintiff had earned.

42.  Plaintiff then phoned Mackert to ask permission to use
the time, and left a message at his home.  He then went to lunch,
where Elliott later came in and asked him why he had not left on
vacation.  Plaintiff explained that he had not heard back from
Mackert.  Elliott assured him he had just phoned Mackert, and
that "everything was okay" and to go ahead and take the vacation
days.

43.  That same day, March 28, 2005, Mackert called plaintiff
on the two-way radio and told plaintiff not to take his earned
vacation time because he wanted two people on each shift.
Mackert also stated he did not know where the vacation days were
coming from, and that he was the head of the Department, not
Elliot.

### 11.  Refusal to Promote Plaintiff.

44.  Since his demotion three ranks, plaintiff was promised
promotions but he has never received one.  Plaintiff was verbally
promised a promotion to Staff Corporal on Labor Day of 2005.
This never occurred. On January 26, 2006, Elliott told plaintiff

that he would be promoted to Corporal on July 1, 2006.  This also never occurred.

### 12.  Unduly Harsh Discipline.

45.  Mackert would administer discipline to plaintiff which was clearly more harsh than that given to other officers under his command for comparable offenses.  One officer who had been harassing a female officer was reprimanded and only threatened with a demotion by Mackert.  When this officer harassed another female officer, nothing happened to him.  Officers have wrecked police vehicles but they were not harshly disciplined.  Another officer was arrested for disorderly conduct and was written up for an incident in which he grabbed two of his employees by the neck and held them to the wall.  He received no disciplinary action whatsoever for his behavior.

### 13.  Falsely Reprimanded.

46.  In February 2006 plaintiff was reprimanded for not filling out a use of force form.  However, at the time there was no such form in use.

### 14.  Denial of Overtime Work.

47.  Plaintiff was denied opportunities to work overtime at special events.  According to policy, such opportunities should be posted but they are not posted.  Instead, they are simply "assigned" by Mackert to officers of his choosing.  For example, NASCAR needed additional officers at a potential rate of $400 -

$500 for the weekend, but plaintiff was never afforded an opportunity to apply for such work.

## C. Causation

48. There is a causal link between First Amendment protected activity and the adverse actions taken against plaintiff. This is demonstrated by:

(a) Direct evidence of anger and antagonism directed to plaintiff. For example, Mackert admitted in a meeting with Campbell on February 7, 2005, that he took away the car because he was angry that plaintiff had filed his December 2, 2004 grievance. In this meeting Mackert also stated that he "was making [his] own life harder than it had to be by filing grievances." Mackert also stated that if he kept on filing grievances, "it won't get any better." Mackert said if he would do as Mackert says (and not file any grievances), then plaintiff "won't have any problems." He also has freely admitted in writing that "I may have told him that he 'pissed me off', but I believe I actually told him that he was pissing everybody off around here by filing all of these grievances." In addition Mackert made several statements to plaintiff, asking him to stop filing grievances, stating that "things wouldn't get better" until the grievances ceased.

(b) The unduly suggestive temporal proximity of events, as indicated above. For example, following the December 2, 2004 grievance, on January 10, 2005 plaintiff was sent for a fitness for duty exam, on January 11th he was demoted three ranks and that month he was placed on rotating shifts until May 5th. Following the January 18, 2005 grievance, on January 29th vehicle privileges were revoked, that day plaintiff's office was invaded, and within weeks the job evaluation process was violated and the improper salute charge was brought against plaintiff. Following the March 18, 2005 grievance, on March 28th plaintiff lost his

accumulated leave and on August 31st the Chief refused to salute plaintiff.  Following the October 31, 2005 grievance, on November 11th a second failure to salute charge was filed, that month vehicle use again was revoked, in December plaintiff was shunned at the Christmas party, on January 26, 2006 he lost a promotion to Corporal, in February a false charge of failure to fill out a use of force form was lodged, and tickets were denied for the Recognition Dinner.

(c)     Singling plaintiff out and treating him differently from similarly situated officers, as detailed above.  For example, plaintiff was disciplined more severely than others when he was demoted three ranks on January 11, 2005, he lost vehicle privileges when others did not, he served more rotating shifts than others, he did not receive a 2004 Christmas bonus while all others did, and he was charged with failure to salute when others who did not salute were not charged.

(d)     Standard operating procedures of the DBPD were violated, as detailed above. For example, plaintiff was paid in January 2005 at an incorrect rate of pay and his demotion that month three ranks was unprecedented in the history of the DBPD.

(e)     the evidence as a whole.

49.   As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has suffered and is suffering lost wages, earnings and benefits, he will suffer diminished earning capacity now and upon his retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

-13-

### IV.  ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

50.  At all times material hereto the individual defendants participated in, authorized, and sanctioned the federal constitutional deprivations described above which illegally retaliated against plaintiff.

51.  At all times material hereto the individual defendants and their agents were acting under color of law.  The federal constitutional deprivations described herein are fairly attributable to the State.

52.  The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

53.  The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.

54.  Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.  Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

55.  The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

56.   The exercise of these rights was a motivating or determinative factor in all actions adverse to plaintiff.

57.   The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

58.   The individual defendant's actions violated clearly established federal constitutional rights of which any official would have known.

59.   The defendants' actions were motivated by bias, bad faith, and improper motive.

60.   The defendants' actions constitute an abuse of governmental power.

61.   The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

62.   The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

63.   The actions of the defendants were taken pursuant to Town policies, customs and/or practices and were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policy making level.

64.   By the policy, custom, and/or practice of officials functioning at a policy making level, the defendants have retaliated against plaintiff.  That policy, custom and/or

practice caused a deprivation of constitutional rights. Additionally, the defendants must have known, or reasonably should have realized, from the nature of their conduct that the policy, custom and/or practice was causing or was likely to cause violations of constitutional rights.

**COUNT I (First Amendment - Petition Clause Retaliation)**

65.  Plaintiff repeats and realleges paragraphs 1 - 64 set out above.

66.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's filing of First Amendment protected grievances.

67.  There is a temporal and causal relationship between plaintiff's aforementioned protected petitions, and these adverse employment actions.

68.  First Amendment protected activity was a substantial or motivating factor in these adverse employment actions.

69.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to take action adverse to plaintiff.

70.  Plaintiff's constitutional right to petition for the redress of grievances has been denied under the First Amendment of the U.S. Constitution.

**Wherefore**, plaintiff prays that the Court:

A.    Enter judgment against the defendants.

-16-

B.  Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.

C.  Enter a judgment against defendants for compensatory damages, including lost wages, back pay, benefits, for future economic loss, front pay, loss of earning capacity, emotional distress, humiliation, embarrassment, and injury to reputation.

D.  Enter a judgment against defendants Mackert and Elliot for punitive damages.

E.  Award plaintiff costs, interest and attorneys' fees for this suit.

F.  Issue a mandatory injunction directing the defendants to restore his rank of Sergeant or promote plaintiff.

G.  Award front pay until plaintiff can be promoted.

H.  Issue a permanent injunction requiring the defendants to:

(1)  Notify everyone who learned of defendants' treatment of plaintiff that their conduct was illegal, and

(2)  Expunge plaintiff's personnel file of any derogatory information relating to this matter.

I.  Enjoin the defendants from taking any further adverse action against plaintiff and from retaliating against plaintiff, now or in the future.

J.  Require such other and further relief as the Court deems just and proper under the circumstances.

**The Neuberger Firm, P.A.**

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East 7th Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

**Martin D. Haverly, Attorney at Law**

/s/ Martin. D. Haverly
**MARTIN D. HAVERLY, ESQ. (#3295)**
Two East 7th Street, Suite 201
Wilmington, DE 19801
(302) 654-2255
Martin@HaverlyLaw.com

Attorneys for Plaintiff


Dated: November 14, 2006




Campbell/draftpleadings/complaint.final

≉JS 44 (Rev. 3/99) **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
PFC. Erik L. Campbell

**DEFENDANTS**
Chief Samuel D. Mackert, III, Gordon Elliot, and
the Dewey Beach Police Department

**(b)** County of Residence of First Listed Plaintiff ___Sussex___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed ___Sussex___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
The Neuberger Firm , P.A.        Martin D. Haverly, Attorney at Law
Two East 7th Sts., Suite 302      Two East 7th Sts., Suite 201
Wilmington, DE 19801              Wilmington, DE 19801
(302)655-0582                     (302)654-2255

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| | | | & Disclosure Act | | Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | X 442 Employment | Sentence | | | Determination Under |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. § 1983 violations of First Amendment rights to Petition and Free Speech.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 11/14/06
SIGNATURE OF ATTORNEY OF RECORD Martin D. Haverly

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ____0 6 - 6 9 1_____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____4____ COPIES OF AO FORM 85.

**NOV 1 4 2006**
_____
(Date forms issued)

_Ka M Van Oot_
_____
(Signature of Party or their Representative)

Karen M. Van Oot
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action